UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLY HALL et al.,<br><br>                                    Plaintiffs,<br><br>v.<br><br>SEA WORLD ENTERTAINMENT,<br>INC.,<br><br>                                    Defendant. | Case No.:  3:15-CV-660-CAB-RBB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[Doc. No. 64] |

This matter is before the Court on SeaWorld's motion to dismiss the second amended complaint.  The motion has been fully briefed and the Court deems it suitable for submission without oral argument.  For the reasons set forth below, the motion is granted and this case is dismissed with prejudice.

## I.      Procedural Background

This now consolidated case originated as three separate class action lawsuits against SeaWorld in which various named plaintiffs sought to represent three separate nationwide classes consisting of purchasers of admission tickets, memberships or other activities at SeaWorld's San Diego, Orlando, or San Antonio parks, respectively (the "San Diego Class", the "Orlando Class", and the "San Antonio Class").  On August 21, 2015, Plaintiffs filed a consolidated 91 page first amended complaint (the "FAC") with five named

plaintiffs: Holly Hall, Paul Danner, Valerie Simo, Joyce Kuhl, and Elaine Browne.  Each of the five named plaintiffs, on behalf of themselves and the three putative classes, alleged that they would not have purchased tickets to SeaWorld's parks had they known at the time what they claim to know now about the treatment and condition of the killer whales (also referred to as "orcas") held in captivity at the parks.  To that end, Plaintiffs alleged that SeaWorld misled and deceived them and other consumers about the treatment and conditions of the killer whales in violation of various consumer statutes in California, Florida, and Texas.

The FAC asserted four claims on behalf of the San Diego Class: (1) violation of the California Unfair Competition Law (the "UCL"); (2) violation of the California False Advertising Law (the "FAL"); (3) violation of the California Consumer Legal Remedies Act (the "CLRA"); and (4) Deceit.  It also asserted claims on behalf of the Orlando Class and the San Antonio Class for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and the Texas Deceptive Trade Practices – Consumer Protection Act ("TDTPA"), respectively, and for unjust enrichment.  The FAC sought restitution, including a refund of the amounts class members paid for admission to the parks, and injunctive relief.

On October 5, 2015, SeaWorld moved to dismiss the FAC.  After consideration of extensive briefing from the parties, the Court granted the motion and dismissed the FAC without prejudice on December 23, 2015.  The opinion articulates several grounds for dismissal.

First, the Court noted at the outset that all four San Diego Class claims were "premised on the same course of allegedly fraudulent conduct and based on the same alleged misrepresentations and omissions, meaning all of the claims are grounded in fraud and must be pled with particularity pursuant to the heightened pleading standards in Rule 9(b).  All four claims require allegations of actual reliance, at least by the named plaintiffs, for those plaintiffs to have standing."  [Doc. No. 59 at 4-5.]  The Court then held that the named San Diego Plaintiffs lacked standing to bring any fraud-based claims based on

alleged affirmative misrepresentations by SeaWorld because "the complaint does not allege (let alone with any specificity) that any of the named plaintiffs saw and relied on SeaWorld's statements about its treatment of whales when purchasing their tickets." [*Id.* at 10.]

Second, the Court held that "because SeaWorld had no duty to disclose the details of the health and conditions of the whales in captivity, the San Diego Plaintiffs could not have relied on SeaWorld's failure to disclose information about the health or conditions of the whales," and that therefore the San Diego Plaintiffs also lacked standing to bring any fraud claims based on pure omissions. [*Id.* at 15.]

Third, the Court held that even if the San Diego Plaintiffs had alleged reliance sufficient to establish standing, the San Diego Class claims were deficient because they were not pled with particularity as required by Federal Rule of Civil Procedure 9(b). After specifically evaluating each of the fifteen alleged misrepresentations listed in the opposition brief, the Court noted that "[n]owhere in the FAC do Plaintiffs specify when they were exposed to any of these statements and which ones they found material and relied on. Moreover, based on the specifics that can be discerned from the FAC, most of the alleged statements were made after Plaintiffs purchased their tickets, meaning Plaintiffs could not have relied on them when making their purchase." [*Id.* at 25.] In addition, with respect to alleged omissions, the Court held that the FAC was inadequately pled because it did not "plead with specificity where any omitted information could have been revealed such that Plaintiffs would have seen it prior to purchasing their tickets." [*Id.* at 26.]

Fourth, the Court dismissed the Orlando Plaintiffs' and San Antonio Plaintiffs' claims for the same lack of standing and lack of specificity that were fatal to the San Diego Plaintiffs' claims.

Finally, the Court separately dismissed Plaintiffs' request for injunctive relief for lack of standing and the CLRA claim because tickets to SeaWorld are neither "goods" nor "services" within the meaning of the CLRA.

Ultimately, the Court dismissed the San Diego Plaintiffs' fraud-based pure omission

claims, the CLRA claim, and all injunctive relief claims, with prejudice.  All remaining claims were dismissed without prejudice.  The order granted Plaintiffs leave to file a second amended complaint.

On January 25, 2016, Plaintiffs filed a second amended complaint ("SAC"), and SeaWorld has filed another motion to dismiss.  The motion has been fully briefed and has been taken under submission.

## II.   New Allegations in the SAC

The FAC was over 90 pages long and the Court summarized the relevant allegations in its prior dismissal order.  The SAC is 100 pages long despite removing the CLRA claim and request for injunctive relief.  It does not remove any factual allegations and is largely identical to the FAC.  Indeed, the SAC even retains and adds allegations to a section with the heading "SeaWorld Has a Duty to Disclose to Consumers its Treatment of Captive Orcas and their Actual Condition" even though the Court explicitly held that SeaWorld *did not* have such a duty to disclose when dismissing the FAC.  Ultimately, the new allegations in the SAC fall into a seven categories:

(1)   A host of footnotes providing the websites where various alleged false statements could be found on the date the SAC was filed;

(2)   Allegations that "[e]ach plaintiff had previously visited a SeaWorld amusement park and attended a Shamu Show prior to their respective purchases" [Doc. No. 60 at ¶¶ 25, 282];

(3)   Allegations of additional alleged false statements made by SeaWorld trainers during Shamu shows, in SeaWorld promotional materials, and by SeaWorld executives [*Id.* at ¶¶ 43, 47, 48, 176, 199, 200];

(4)   Allegations of additional alleged false statements made by SeaWorld executives or employees after the FAC was filed [*Id.* at ¶¶ 256, 257];

(5)   Allegations in the above-referenced "Duty to Disclose" section that Plaintiffs relied "on the belief that SeaWorld's captive orcas were healthy and thriving at SeaWorld," which belief was "based upon the information communicated by SeaWorld over the course

of its long-term, extensive advertising campaign, during its Shamu shows, and in its parks."
The SAC then alleges that if SeaWorld had "told the truth about the condition and treatment
of SeaWorld's captive orcas, either at its Shamu Shows or otherwise in promotional
materials at SeaWorld's parks," Plaintiffs would not have purchased the tickets in question
in this lawsuit and would have demanded a refund for their prior visit. [*Id.* at ¶¶ 283-85,
291];

(6)     Allegations that SeaWorld's treatment of its captive whales violates the UCL
because they are unlawful under California Penal Code Section 597(b) [*Id.* at ¶¶ 310-11];
and

(7)     Legal argument and citations concerning the FDUTPA claim [*Id.* at ¶¶ 341-
43.].

The SAC asserted the same claims as the FAC, with the exception of the CLRA
claim, which the Court had dismissed with prejudice.

## III.     Legal Standard

The Court applies the same legal standards to the instant motion as it did to
SeaWorld's motion to dismiss the FAC.  Specifically, in most cases, to survive a motion
to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570
(2007)).  Thus, the Court "accept[s] factual allegations in the complaint as true and
construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek
v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  On the other
hand, the Court is "not bound to accept as true a legal conclusion couched as a factual
allegation." *Iqbal*, 556 U.S. at 678; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 679
(9th Cir. 2001) ("Conclusory allegations of law are insufficient to defeat a motion to
dismiss").  Nor is the Court "required to accept as true allegations that contradict exhibits
attached to the Complaint or . . . allegations that are merely conclusory, unwarranted
deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a [12(b)(6)] motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

Here, however, most of Plaintiffs' claims are based on alleged fraud and are therefore subject to the heightened pleading standard under Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud."  Fed. R.Civ. P. 9(b).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks and ellipses omitted); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.").  "Averments of fraud must be accompanied by the *who, what, when, where, and how* of the misconduct charged."  *Kearns*, 567 F.3d at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)) (*emphasis* added; internal quotation marks omitted).  Thus, when a plaintiff claims that a statement is false or misleading, "[t]he plaintiff must set forth *what* is false or misleading about a statement, and *why* it is false."  *Vess*, 317 F.3d at 1106 (*emphasis* added; internal quotation marks omitted).

Rule 9(b)'s heightened pleading requirements serve "three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'"  *Kearns*, 567 F.3d at 1125 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)) (brackets in original).  These heightened pleading requirements are equally

applicable to fraud claims based on omissions or nondisclosures by a defendant. *See Kearns*, 567 F.3d at 1127 ("Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b).").

## IV.   Discussion

Based on the minimal and superficial allegations added to the SAC and Plaintiffs' arguments in opposition to SeaWorld's motion to dismiss, it appears that Plaintiffs have treated the Court's grant of leave to file the SAC more as an opportunity to seek reconsideration of the Court's prior dismissal order than as a chance to remedy the pleading deficiencies identified by the Court in that order.  In short, the SAC still does not allege reliance sufficient to create standing for the named Plaintiffs on their fraud claims and even if it did, the SAC still does not plead the purported misrepresentations with particularity. Accordingly, the discussion and analysis in the Court's prior order is equally applicable to the SAC, and the Court declines Plaintiff's thinly veiled request for reconsideration of that order.  Nevertheless, the new allegations in the SAC are discussed briefly below.

### A. The San Diego Class Claims

#### 1.   Standing

One deficiency of the FAC was the lack of any allegations that "the named plaintiffs actually saw or read *any* advertising or statements made by SeaWorld prior to purchasing their tickets." [Doc. No. 59 at 10.]  In their opposition, the only new allegations in the SAC that Plaintiffs cite as establishing standing are that the named Plaintiffs had visited SeaWorld and attended a Shamu show prior to the ticket purchases at issue in this lawsuit, and that during the Shamu shows SeaWorld did not disclose the alleged "true facts" about the condition of the killer whales.

These new allegations do not establish standing for all of the same reasons articulated in the prior dismissal order.   The SAC does not allege any specific misrepresentations made during the Shamu show the named Plaintiffs attended that they relied on when purchasing tickets to return to the park.  Further, because SeaWorld did not

have any duty to disclose information about the health or condition of the whales, the alleged failure to provide such information during the Shamu shows is not actionable. Accordingly, for all of the reasons set forth in the Court's prior order, Plaintiffs lack standing to bring their UCL, FAL, and deceit claims based on misrepresentations or omissions by SeaWorld.

## 2.   The Specifics of the Misrepresentations/Omissions

Another deficiency if the FAC was its failure to plead with particularity "the who, what, when, where, and how" of the misrepresentations or omissions at issue. *Kearns*, 567 F.3d at 124. The only additional details about the alleged misrepresentations included in the SAC are citations to websites where the statements could be found at the time the SAC was filed. The SAC, however, still fails to identify whether Plaintiffs actually saw such statements, when Plaintiffs saw them, where Plaintiffs saw them, and why such statements are measurably false. That an alleged false statement exists on the internet today does not provide the who, what, when, where, and how required for a fraud claim based on purported reliance on that false statement to make a purchase three years ago. Likewise, allegations that Plaintiffs attended a Shamu show prior to making their ticket purchases combined with general allegations that SeaWorld trainers have made misrepresentations at Shamu shows do not save the SAC without allegations that the alleged misrepresentations were made at the specific Shamu shows attended by Plaintiffs and that Plaintiffs specifically relied on such statements when purchasing the tickets in question here. Accordingly, the SAC does not remedy the FAC's failure to plead fraud with specificity.

As for fraud-based claims based on omissions, the order dismissing the FAC relied on the Ninth Circuit's opinion in *Wilson v. Hewlett–Packard Co.,* 668 F.3d 1136, 1141 (9th Cir. 2012), and held that SeaWorld had no duty to disclose information about the condition of the whales. The order, however, noted that Plaintiffs could assert an omission claim "to the extent the allegedly omitted material is directly 'contrary to a representation actually made by the defendant.'" [Doc. No. 59 at 33 citing *Wilson*, 668 F.3d at 1141.] In the SAC and in their opposition, however, Plaintiffs make no effort to comply with this limitation.

Instead, the opposition blatantly re-argues that SeaWorld did in fact have a general duty to disclose the condition of the whales, relying on *Rutledge v. Hewlett Packard Co.*, 238 Cal. App. 4th 1164 (Cal. Ct. App. 2015), a case that Plaintiffs did not cite in their opposition to the motion to dismiss the FAC.  The Court declines to reconsider its prior holding, and in any event is not persuaded that *Rutledge* renders *Wilson* bad law or stands for the existence of the truly limitless duty to disclose for which Plaintiffs argue here.  Indeed, several recent federal opinions issued after *Rutledge* have relied on *Wilson* to hold that the defendants did not have duty to disclose information that did not pose safety risks to consumers.  *See, e.g., McCoy v. Nestle USA, Inc.*, __ F.Supp. 3d __, No. 15-cv-4451-JCS, 2016 WL 1213904, at *9-10 (N.D. Cal. Mar. 29, 2016) (holding that *Wilson*'s holding that "an obligation to disclose under California law extends only to matters of product safety" governs); *Hodsdon v. Mars, Inc.*, __ F.Supp. 3d __, No. 15-CV-04450-RS, 2016 WL 627383, at *6 (N.D. Cal. Feb. 17, 2016) ("In light of *Wilson* and overwhelming authority, manufacturers are duty-bound to disclose only information about a product's safety risks and product defects."); *Wirth v. Mars Inc.*, No. SACV151470DOCKESX, 2016 WL 471234, at *3 (C.D. Cal. Feb. 5, 2016) ("Following *Wilson*, several federal district courts have reaffirmed that a manufacturer's duty to affirmatively disclose information to consumers is confined to safety issues.").  Accordingly, the fraud claims in the SAC based a purported breach of a duty to disclose the health and condition of the whales are dismissed for all of the same reasons set forth in the Court's prior order.

### 3.   UCL Claim Based on "Unlawful" Prong

"An action under the UCL's unlawful prong 'borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.'"  *Wilson*, 668 F.3d at 1145-46 (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999)).  Here, the SAC adds an allegation that SeaWorld violated the UCL's "unlawful" prong because SeaWorld's "'business act[s] or practice[s]' violate Cal. Penal Code § 597(b)."  [Doc. No. 60 at ¶ 310.]  The SAC quotes the following portion of section 597(b):

whoever, having the charge or custody of any animal, either as owner or otherwise, subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, or fails to provide the animal with proper food, drink, or shelter or protection from the weather . . . .

[*Id.*] Although this claim under the unlawful prong of the UCL may not require allegations of reliance to the extent it is not based on misrepresentations or omissions, a plaintiff asserting a UCL claim based on violation of animal cruelty laws "must still show that the alleged violation caused or resulted in the loss of money or property." *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 644 (C.D. Cal. 2014); *see also In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at *7 (N.D. Cal. Sept. 1, 2010) ("Establishing that a defendant violated a law only accomplishes half of a plaintiff's burden in a UCL unlawful prong action. If plaintiffs, here, can make out a violation of the FDCA or the Sherman Laws, plaintiffs would then be required to prove that they were injured 'as a result of' defendants' law-violating conduct."), *aff'd*, 464 F. App'x 651 (9th Cir. 2011). The SAC, however, does not allege (nor could it) that SeaWorld's alleged violation of Section 597(b) caused or resulted in the injury Plaintiffs allege here.[1]  Because Plaintiffs did not suffer (and could not have suffered) any economic injury caused by SeaWorld's alleged violation of animal cruelty laws, they lack standing to bring a UCL claim predicated on a violation of Section 597(b).[2]  Accordingly, this claim under the UCL's unlawful prong is also dismissed with prejudice.

---

[1] To adequately plead such causation, the SAC would have to make the nonsensical allegation that Plaintiffs purchased their tickets to SeaWorld *because* SeaWorld violated Section 597(b).  In reality, the only thing Plaintiffs can allege is that they purchased their tickets because SeaWorld did not disclose that its treatment of the whales violated Section 597(b).  Such an allegation, however, invokes the UCL's fraud prong, not the unlawful prong, because Plaintiff's purported damages were caused by the failure to disclose, not the alleged violation of the statute.  A UCL fraud claim on this ground fails for all of the reasons stated herein and in the Court's prior dismissal order with respect to Plaintiff's other misrepresentation and omission allegations.

[2] For the same reason, Plaintiffs lack standing to bring a UCL claim under the unfairness prong based on violation of public policy concerning treatment of the whales.  Such an alleged public policy violation did not cause or result in any injury to Plaintiffs.

## B. Orlando Class and San Antonio Class Claims

The SAC reasserts a claim under FDUTPA on behalf of the Orlando Class and a claim under TDTPA on behalf of the San Antonio Class. The SAC also reasserts the unjust enrichment claim on behalf of both classes. In opposition to SeaWorld's motion to dismiss the FAC, Plaintiffs spent less than four of the thirty-two pages of their brief on these claims, and the Court ultimately dismissed these claims for the same reasons it dismissed the San Diego Class' claims.

Although Plaintiffs now dedicate a much more substantial portion of their brief to these claims, the SAC asserts no new substantive factual allegations unique to these claims.[3] Thus, any arguments in Plaintiffs' opposition here either were rejected by the Court when it dismissed the FAC, or are new legal arguments that Plaintiff could have made in its prior opposition brief. In other words, Plaintiffs effectively ask the Court to reconsider its prior order on these claims, but in light of the absence of new factual allegations in the SAC, none of Plaintiffs' arguments justify such reconsideration.[4] Accordingly, the FDUTPA, TDTPA, and unjust enrichment claims are dismissed for the same reasons set forth in the order dismissing the FAC.

## V. Disposition

For the reasons discussed above, SeaWorld's motion to dismiss is **GRANTED**. Because Plaintiffs have demonstrated an inability to remedy to the deficiencies identified by the Court in its order dismissing the FAC, including in particular their lack of standing

---

[3] The SAC includes only new allegations quoting various legal authority about the interpretation of FDUTPA. These allegations do not defeat a motion to dismiss. *See Lee*, 250 F.3d at 679. In addition, in the allegations specific to the FDUTPA claim, the SAC restates Plaintiffs' general allegations that SeaWorld failed to disclose "the truth" about the treatment of the whales and that Plaintiffs would not have bought tickets had they known such information. Allegations to this effect appeared throughout the FAC and are not new to the SAC.

[4] *See generally Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (noting that "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law. A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.") (internal quotation marks and citations omitted).

1   and failure to plead with particularity under Rule 9(b), the SAC is **DISMISSED WITH**

2   **PREJUDICE**.

3         It is **SO ORDERED**.

4   Dated:  May 13, 2016

5

6                                        Hon. Cathy Ann Bencivengo
                                         United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:15-CV-660-CAB-RBB